Filed 8/26/24  P. v. Hall CA5

## <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DASHAWN TYRIQ HALL,<br><br>    Defendant and Appellant. | F084163<br><br>(Super. Ct. No. F21908187)<br><br><br>**OPINION** |

-ooOoo-

### <u>THE COURT</u><sup>*</sup>

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Warda Ali-Baloch, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

<sup>*</sup>        Before Poochigian, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

Dashawn Tyriq Hall, appellant, was convicted of second degree robbery with a personal use of a firearm enhancement. He appeals his sentence of 12 years, arguing the trial court abused its discretion when it declined to strike the firearm use enhancement. We affirm.

## PROCEDURAL HISTORY

On December 20, 2021, the Fresno County District Attorney's Office filed an information charging appellant with one count of second degree robbery in violation of Penal Code, section 211,[1] with a personal use of a firearm enhancement pursuant to section 12022.53, subdivision (b).

On February 28, 2022, a jury found appellant guilty of second degree robbery and found true the personal use of a firearm enhancement. On March 28, 2022, the trial court sentenced appellant to the low term of two years on the second degree robbery, and 10 years on the firearm enhancement, for an aggregate term of 12 years in prison.

## STATEMENT OF FACTS

On January 24, 2021, victim K.D. agreed to meet a potential buyer for his athletic shoes at a local high school. He communicated with the buyer through the buyer's social media account and negotiated to sell the shoes to the buyer for $320.

K.D. drove to the high school with his brother, R.D., who remained in the car while he got out. After approximately 30 minutes, two individuals arrived in a white car with a black or broken bumper. The driver, later identified as T.H., got out of the car, and the passenger, later identified as appellant, initially remained inside. Surveillance camera footage from the high school showed the driver was wearing a black hooded sweater with a brand logo on it, and the passenger was wearing a red shirt and a black sweater with

---

[1]     Undesignated statutory references are to the Penal Code.

logos on the chest and sleeves. They were subsequently identified based on videos T.H. posted to his social media account.

K.D. gave T.H. the shoes to check their condition, and T.H. said, "Yeah, they're fine." Appellant then got out of the vehicle and asked K.D. if he had change. K.D. went to the passenger side of his car and asked R.D. for some change. R.D. pulled out his wallet and gave K.D. around $40.

As T.H. continued to look at the shoes, appellant approached K.D. while K.D. was still by the car, grabbed him by the neck, pushed him down, pulled out a gun, held it to the side of K.D.'s head, and insisted that K.D. "hand it all over." K.D. testified he was "very scared," and R.D. described the robbery as "pretty terrifying." K.D. told R.D. to "hand it all over" and R.D. gave appellant what money he had in his wallet. T.H. and appellant then ran back to their car with the money and the shoes and drove away.

K.D. testified he got a good look at the gun. He testified that the gun looked similar to the gun of an officer who later questioned him, but that it had an attachment on the bottom of the barrel.

During the following investigation, law enforcement secured a warrant for the social media account with which K.D. had previously communicated to sell the shoes. They retrieved three videos from the account. Two of the videos were posted 10 or 12 minutes after the robbery was reported to law enforcement, and showed two males in a vehicle whose clothing matched the clothing of the robbery suspects. One video showed T.H. holding a firearm magazine and appellant pulling out a firearm with an attached laser and pointing it toward the camera. In the second video, appellant continued to hold the firearm.

**DISCUSSION**

**I.     The Trial Court Did Not Abuse Its Discretion Declining to Strike the Firearm Use Enhancement**

Appellant argues the trial court's refusal to strike the firearm use enhancement was an abuse of discretion in light of the numerous mitigating factors in this case. Appellant argues several section 1385, subdivision (c)(2) factors apply to this case, as well as mitigating factors pursuant to California Rules of Court, rule 4.423.[2] We find the court did not abuse its discretion finding no mitigating factors pursuant to section 1385, subdivision (c)(2) apply, and that dismissal of the enhancement was not in the furtherance of justice, and affirm the conviction.

**A.  Background**

Neither appellant nor the prosecution filed sentencing briefs prior to sentencing. A probation report, filed March 28, 2022, recommended the low term of two years for the robbery, and 10 years for the firearm use enhancement for a total sentence of 12 years.

On March 28, 2022, appellant was sentenced. Appellant argued the firearm use enhancement should be stricken, because appellant was youthful,[3] had a traumatic childhood, had no criminal history, and there was no information about whether the firearm was real, a replica, or operable because it was never recovered. The prosecution argued for the imposition of the firearm use enhancement, because appellant was an active participant in the crime and put the gun to the victim's head. The prosecution further argued that regardless of whether the gun was real or a replica, the victims believed the gun was real and were in fear for their lives.

---

[2]     All further rule references are to the California Rules of Court.

[3]     Appellant was 18 years old at the time of the offense, and 19 years old at sentencing.

The trial court declined to strike appellant's firearm use enhancement, making the following ruling.

> "There was substantial evidence to support … the jury's … decision that [appellant] possessed a firearm within the meaning of [section] 12022.53.  So, for that reason, the Court is going to decline striking the allegation.  The Court recognizes it has the ability under [section] 1385 and [section] 12022.53[, subdivision (h)] to strike the allegation and/or supplant it with a lesser-included allegation pursuant to the authority of *People v. Tirado* [(2022)] 12 Cal.5th 688.…  And the reason why the Court would decline to exercise that authority would be that the manner in which this firearm was used was active rather than a passive use of a firearm.  This wasn't merely having a firearm in the waistband where someone might lift a shirt, which I've seen happen.  Here, the evidence established that [appellant] pulled a gun out and pointed it at the victim's head.  So, accordingly, notwithstanding his youthfulness and notwithstanding his lack of history, the Court does decline to exercise [section] 1385 relief in that manner."

**B.  Legal Standard**

Section 12022.53, subdivision (b) punishes any person who, in the commission of a specified felony personally uses a firearm, with an additional term of 10 years. Section 12022.53, subdivision (h) in turn states "[t]he court may, in the interest of justice pursuant to [s]ection 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section.  The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."

"In general, we review for abuse of discretion the trial court's decision not to strike a sentence enhancement under section 1385, subdivision (a)."  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.)  " 'To prove an abuse of discretion, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' "  [Citation.]  To meet this burden, the defendant must "affirmatively demonstrate that the

trial court misunderstood its sentencing discretion." ' " (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988.) "Absent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.)

### C. Analysis

Since Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721) amending section 1385 to add subdivision (c) went into effect on January 1, 2022, trial courts are faced with two distinct analyses when determining whether to strike a sentencing enhancement. The first, pursuant to section 1385, subdivisions (a) and (c)(1), grants the court discretion to dismiss enhancements "in the furtherance of justice."[4] The second, pursuant to section 1385, subdivision (c)(2), directs the court to weigh enumerated mitigating factors against the risk to public safety. Because appellant argues that section 1385, subdivision (c)(2) mitigating factors are present in this case, to determine whether the court abused its discretion, we must first discuss which of these standards apply.

There was no evidence offered by appellant to prove the existence of any of the mitigating factors listed in section 1385, subdivision (c)(2)(A)–(I). There were no allegations that application of the enhancement would result in a discriminatory racial impact. (§ 1385, subd. (c)(2)(A).) There were not multiple enhancements alleged in this case and the application of an enhancement could not result in a sentence of over 20 years. (§ 1385, subd. (c)(2)(B), (C).) There was no allegation that the offense is connected to mental illness, the current offense is a violent felony as defined by section 667.5, subdivision (c), appellant was not a juvenile when he committed the current offense, and the enhancement was not based on a prior conviction that was over five years old. (§ 1385, subd. (c)(2)(D), (F)–(H).)

---

[4]     Section 12022.53, subdivision (h) discretion applies this same standard.

Appellant argues that the current offense is connected to prior victimization or childhood trauma. (§ 1385, subd. (c)(2)(E).) Pursuant to section 1385, subdivision (c)(6)(A), "childhood trauma" is when a person, as a minor, experienced physical, emotional, or sexual abuse, or physical or emotional neglect.

"A court may conclude that a defendant's childhood trauma was connected to the offense if, after reviewing any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, medical records, or records or reports by qualified medical experts, the court concludes that the defendant's childhood trauma substantially contributed to the defendant's involvement in the commission of the offense." (§ 1385, subd. (c)(6)(A).)

There was no evidence that appellant suffered childhood trauma presented in this case. Neither appellant nor any family members, friends, or acquaintances made any statements to the trial court. None of the documents listed in section 1385, subdivision (c)(6)(A) were introduced as evidence. The only mention of childhood trauma was appellant's counsel's assertion that appellant "did suffer significant childhood trauma." Because there was no evidence for the court to review to determine whether any alleged childhood trauma substantially contributed to appellant's involvement in the commission of the offense, the court declining to find the existence of this mitigating factor was not an abuse of the court's discretion.

Appellant additionally argues that although a firearm was used in the offense, it was inoperable or unloaded. (§ 1385, subd. (c)(2)(I).) Although there was no evidence that the gun used was operable or loaded,[5] there was likewise no evidence to the contrary—the gun was never recovered, and appellant did not testify. The absence of

[5] An enhancement under section 12022.53, subdivision (b) explicitly does not require the gun used to be operable or loaded.

evidence is not evidence of absence. The trial court did not abuse its discretion declining to find the existence of this mitigating factor.

Because none of the mitigating factors in section 1385, subdivision (c)(2) are present in this case, we turn to the authority of the trial court to strike a section 12022.53, subdivision (b) enhancement in the furtherance of justice. (§§ 12022.53, subd. (h); 1385, subd. (a), (c)(1).)

"The trial court's power to dismiss an action under section 1385, while broad, is by no means absolute. Rather, it is limited by the amorphous concept which requires that the dismissal be 'in furtherance of justice.'" (*People v. Orin* (1975) 13 Cal.3d 937, 945.) In the language of section 1385, " 'furtherance of justice[]' requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal.'" (*Ibid*.) (Italics omitted.) "At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.'" (*Ibid*.)

"In exercising its discretion under section 1385, the court should consider the nature and circumstances of the defendant's current crimes, the defendant's prior convictions, and the particulars of his or her background, character, and prospects." (*People v. Orabuena* (2004) 116 Cal.App.4th 84, 99.)

Section 1385, subdivision (c)(2) requires trial courts to give "great weight" to evidence of mitigating circumstances under section 1385, subdivision (c)(2)(A)–(I). In contrast, neither section 1385, subdivisions (a) and (c)(1), nor section 12022.53, subdivision (h), reference the mitigating sentencing factors listed in rule 4.423 and these factors are certainly not dispositive of the court's analysis. Such factors are instead encompassed within the circumstances of appellant's current crime, his prior convictions, and the particulars of his background.

The trial court found two mitigating sentencing factors. First, that appellant was under the age of 26 at the time of the offense (rule 4.423(b)(6)) and that appellant had no

prior criminal record (rule 4.423(b)(1)).  The court found no circumstances in aggravation.  Due to these mitigating circumstances, the court imposed the lower term of two years for the robbery conviction.

There is no evidence the trial court misunderstood its sentencing discretion, as the court both referenced *People v. Tirado*, *supra*, 12 Cal.5th 688 and noted appellant's youthfulness and lack of criminal history.  The court declined to dismiss the gun use enhancement, however, because appellant was an "active" participant in the robbery and did not merely show a gun in his waistband or passively draw the weapon.  Appellant grabbed K.D. by the neck, pushed him down, pulled out his gun, and held it against the side of K.D.'s head.  Both K.D. and R.D. were scared and terrified.

We do not find the trial court's decision to be irrational or arbitrary.  Although appellant was youthful, he still made a choice to not only bring a gun to the robbery, but to actively threaten the victim's life with it by restraining the victim and placing the gun to the victim's head.  It is not an abuse of discretion for the court to determine that the interests of society to punish such violent and dangerous behavior outweigh appellant's youthfulness and lack of criminal history.

## DISPOSITION

The judgment is affirmed.